# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

SAID ELMAJZOUB,

     Plaintiff,

     v.

CHARLES DANIELS, Director, Nevada
Department of Corrections, in his official
capacity, only;

HAROLD WICKHAM, Deputy Director –
Programs, Nevada Department of
Corrections, in his official capacity, only;

KIM TOBIAS THOMAS, Former Deputy
Director – Programs, Nevada Department of
Corrections, in her individual capacity, only;

TIM GARETT, Warden, Lovelock
Correctional Center, Nevada Department of
Corrections, in his official capacity, only;

RENEE BAKER, Former Warden, Lovelock
Correctional Center, Nevada Department of
Corrections, in her individual capacity, only;

TARA CARPENTER, Former Associate
Warden, Lovelock Correctional Center,
Nevada, in her individual capacity, only;

SCOTT DAVIS, Chaplain, Lovelock
Correctional Center, Nevada Department of
Corrections, in his individual and official
capacities; and,

MARC LAFLEUR, Caseworker, Lovelock
Correctional Center, Nevada Department of
Corrections, in his individual capacity, only;

     Defendants.

Case No. 3:19-cv-00196-MMD-WGC
Hon. Miranda M. Du

**AMENDED COMPLAINT FOR
DECLARATORY RELIEF AND FOR
DAMAGES AND JURY DEMAND**

1

## AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR DAMAGES

Plaintiff, **Said Elmajzoub**, by and through his undersigned counsel, **CAIR Legal Defense Fund** and **Allen Lichtenstein, Esq.**, files this Amended Complaint for Declaratory and Injunctive Relief and for Damages.  This Amended Complaint is filed pursuant to  28 U.S.C. § 1331 and 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments to the United States Constitution, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, and the Nevada Constitution art. I, § 4.  Plaintiff states as follows:

### Nature of this Action

1.     This action challenges the Nevada Department of Corrections' systematic effort to disfavor Muslim incarcerees and their spiritual needs over those of incarcerees of other faiths.

2.     Defendants have unlawfully placed obstacles that prevent Muslim incarcerees, including Plaintiff, from performing their weekly congregational jumu'ah prayers in accordance with their sincerely held religious beliefs.[1]

3.     At the same time, Defendants have dedicated space to other faith groups, including Christian and Jews, to perform their congregational prayers in accordance with their faith.

---

[1] Muslims are required to conduct and participate in religious congregational services every Friday in the early afternoon. This weekly service—known as jumu'ah—consists of a religious sermon followed by congregational prayer.

4.     Similarly, Defendants have also dedicated spaces for secular programming, including vocational training, education opportunities, and treatment services.

5.     Defendants' policies and procedures substantially burden Plaintiff's religious exercise, discriminate against Plaintiff on the basis of religious denomination, and treat Plaintiff on less than equal terms with other religious and non-religious similarly situated persons.

6.      Defendants have not identified a compelling government interest for either failing to provide or placing onerous hurdles upon Muslim incarcerees before they could be provided with access to a space where they can perform their weekly jumu'ah prayers in accordance with their sincerely held religious beliefs.

7.     Nor have Defendants identified a compelling government interest for unlawfully imposing policies and procedures that substantially burden the rights of Plaintiff to the free exercise of religion by means that are not the least restrictive means available to correctional facilities to protect their asserted government interests.

8.     These actions are not the result of ignorance or ineptitude but a part of the Defendants' deliberate plan to prefer other faiths over Islam. Indeed, Defendants have created a systematic preference against Islam and their Muslim incarcerees.

## Jurisdiction and Venue

9.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 over Plaintiff's claims of violations of the First and Fourteenth Amendments to the United States Constitution, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq., and 42 U.S.C. § 1983.

3

10.     This Court has federal question jurisdiction, under 28 U.S.C. § 1343 over Plaintiff's claims over the deprivation under color of State law of rights secured by the First and Fourteenth Amendments to the Constitution of the United States and the laws of the United States.

11.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims of violations of the Nevada Constitution art. I, § 4.

12.     This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in the State of Nevada.

13.     The Nevada Department of Corrections and its Lovelock Correctional Center where Plaintiff is incarcerated, is an "institution" within the meaning of 42 U.S.C. § 2000cc1(a) and 42 U.S.C. § 1997.  The Nevada Department of Corrections was awarded funding by the United States Department of Justice, Office of Justice Programs, Second Chance Act Statewide Adult Recidivism Reduction Strategic Planning Program Grant to support efforts in developing a comprehensive, data-driven strategic plan with measurable benchmarks.

14.     Plaintiff's claims for attorneys' fees and costs are predicated upon 42 U.S.C. §§ 1988 and 2000cc-2(d), which authorize the award of attorneys' fees and costs to prevailing parties, under 42 U.S.C. § 1983 and RLUIPA.

15.     Venue is proper under 42 U.S.C. § 1391 as to all Defendants because Defendants operate within the geographical boundaries of the State of Nevada, and a substantial part of the acts described herein occurred within this District.

4

**Plaintiff**

16.     Plaintiff Said Elmajzoub is a Muslim and at all relevant times and events stated herein, was incarcerated at Lovelock Correctional Center ("LLC"), 1200 Prison Road, Lovelock, Nevada 89419. At all relevant times, Plaintiff Elmajzoub was a "person confined to an institution," as defined by 42 U.S.C. § 2000cc *et seq*.

**Defendants**

**Defendants Sued in Their Official and Individual Capacities**

17.     Defendant Charles Daniels is the Director of the State of Nevada Department of Corrections ("NDOC").  Defendant Daniels is a decision-maker and possesses authority to formulate, establish and approve all policies and procedures concerning all NDOC correctional facilities, including Lovelock Correctional Center ("LCC").  Defendant Daniels is "responsible for the implementation of all Departmental programs for inmates" and Level 3 grievances.[2]  Defendant Daniels is ultimately responsible for all grievances filed in DOC facilities as he is "responsible for establishing and supervising an inmate grievance process that provides an appropriate response to an inmate's claim, as well as an administrative means for prompt and fair resolution of, inmate problems and concerns."[3]  Defendant Daniels is being sued in his official and individual capacities.

---

[2] *See* NDOC Administrative Regulation 801, Correctional Programs/Classes/Activities (3/7/2017), *available at*:
https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20 801%20- %20Correctional%20Programs%20-%20Final%20-%2003072017.pdf
[3] *See* NDOC Administrative Regulation 740, Inmate Grievance Procedure, at 1, *available at*:
https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20 740%20-%20Inmate%20Grievance%20Procedure%20-%20Temporary%20-%2011.20.2018.pdf

18.     Defendant Harold Wickham is the Deputy Director – Programs of the Nevada Department of Corrections.  Defendant Wickham is a decision-maker and possesses authority to formulate, establish and approve all policies and procedures concerning programming for incarcerees in all NDOC correctional facilities, including LCC. Defendant Wikham is "responsible for the practice of Religious and Faith Group services in NDOC facilities."[4] Defendant Wickham is also responsible for handling Level 2 grievances that regard religious programming.[5]  Defendant Wickham is being sued in his official and individual capacities.

19.     Defendant Tim Garett is the Warden of LCC.  Defendant Garett is a decision-maker and possesses authority to formulate, establish and approve all policies and procedures concerning operations at LCC. Defendant Garett is "responsible, through [his] subordinate staff, for daily management and operation of correctional program[s], classes, and activities for inmate, within [his] institution and facilit[y]."[6]  Defendant Garett is also "responsible for the practice of Religious and Faith Group services in NDOC facilities."[7]  Defendant Garett

---

[4] *See* NDOC Administrative Regulation 810, Religious Faith Group Activities and Programs at 1, *available at*:
https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20810%20Religious%20Faith%20Group%20Activities%20and%20Programs%20Final%2011-15-16.pdf.
[5] *See* NDOC Administrative Regulation 740, Inmate Grievance Procedure, at 13, *available at*:
https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20740%20-%20Inmate%20Grievance%20Procedure%20-%20Temporary%20-%2011.20.2018.pdf.
[6] *See* NDOC Administrative Regulation 801, Correctional Programs/Classes/Activities (3/7/2017), *available at*:
https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20801%20- %20Correctional%20Programs%20-%20Final%20-%2003072017.pdf.
[7] *See* NDOC Administrative Regulation 810, Religious Faith Group Activities and Programs at 1, *available at*:
https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20810%20Religious%20Faith%20Group%20Activities%20and%20Programs%20Final%2011-15-16.pdf.

is also responsible for handling Level 1 grievances.[8]  Defendant Garett is being sued in his official and individual capacities.

20.    Defendant Scott Davis is the Chaplain at LCC.   Defendant Davis is "responsible for the practice of Religious and Faith Group services in NDOC facilities."[9] Defendant Davis had and continues to have supervisory authority and control over the approval and coordination of religious programming and religious services requests by incarcerees during the time of Plaintiff's confinement. Defendant Davis is also responsible for resolving all informal grievances that regard religious programming.[10]   Defendant Davis personally engaged in discriminatory behavior against Plaintiff. Defendant Davis is being sued in his official and individual capacities.

## Defendants Sued in Their Individual Capacities, Only

21.    Defendant Kim Tobias Thomas is the former Deputy Director – Programs of the Nevada Department of Corrections.   Defendant Tobias was a decision-maker and

---

[8] *See* NDOC Administrative Regulation 740, Inmate Grievance Procedure, at 11, *available at*: https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20740%20-%20Inmate%20Grievance%20Procedure%20-%20Temporary%20-%2011.20.2018.pdf.
[9] *See* NDOC Administrative Regulation 810, Religious Faith Group Activities and Programs at 1, *available at*: https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20810%20Religious%20Faith%20Group%20Activities%20and%20Programs%20Final%2011-15-16.pdf.
[10] *See* NDOC Administrative Regulation 740, Inmate Grievance Procedure, at 9, *available at*: https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20740%20-%20Inmate%20Grievance%20Procedure%20-%20Temporary%20-%2011.20.2018.pdf; NDOC Administrative Regulation 810, Religious Faith Group Activities and Programs, at 1, *available at*: https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20810%20Religious%20Faith%20Group%20Activities%20and%20Programs%20Final%2011-15-16.pdf.

7

possesses authority to formulate, establish and approve all policies and procedures concerning programming for incarcerees in all NDOC correctional facilities, including LCC.  Defendant Tobias was "responsible for the practice of Religious and Faith Group services in NDOC facilities."[11]   Defendant Tobias was also responsible for handling Level 2 grievances that regard religious programming.[12] Defendant Tobias personally engaged in discriminatory behavior against the Plaintiff. Defendant Tobias is being sued in her individual capacity, only.

22.    Defendant Renee Baker is the former Warden of LCC.  Defendant Baker was a decision-maker and possesses authority to formulate, establish and approve all policies and procedures concerning operations at LCC.  Defendant Baker was "responsible, through [her] subordinate staff, for daily management and operation of correctional program[s], classes, and activities for inmate, within [her] institution and facility[y]."[13]   Defendant Baker was "responsible for the practice of Religious and Faith Group services in NDOC facilities."[14]

---

[11] *See* NDOC Administrative Regulation 810, Religious Faith Group Activities and Programs at 1, *available at*:
https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20810%20Religious%20Faith%20Group%20Activities%20and%20Programs%20Final%2011-15-16.pdf.
[12] *See* NDOC Administrative Regulation 740, Inmate Grievance Procedure, at 13, *available at*:
https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20740%20-%20Inmate%20Grievance%20Procedure%20-%20Temporary%20-%2011.20.2018.pdf
[13] *See* NDOC Administrative Regulation 801, Correctional Programs/Classes/Activities (3/7/2017), *available at*:
https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20801%20- %20Correctional%20Programs%20-%20Final%20-%2003072017.pdf.
[14] *See* NDOC Administrative Regulation 810, Religious Faith Group Activities and Programs at 1, *available at*:
https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20810%20Religious%20Faith%20Group%20Activities%20and%20Programs%20Final%2011-15-16.pdf.

Defendant Baker was also responsible for handling Level 1 grievances. [15]  Defendant Baker personally engaged in discriminatory behavior against the Plaintiff.  Defendant Baker is being sued in her individual capacity, only.

23.     Defendant Tara Carpenter is the former Associate Warden of LCC. Defendant Carpenter was a decision-maker and possesses authority to formulate, establish and approve all policies and procedures concerning operations at LCC. Defendant Carpenter was "responsible, through [her] subordinate staff, for daily management and operation of correctional program[s], classes, and activities for inmate, within [her] institution and facility[y]." [16]  Defendant Carpenter was "responsible for the practice of Religious and Faith Group services in NDOC facilities." [17]  Defendant Carpenter was also responsible for handling Level 1 grievances. [18]  Defendant Carpenter personally engaged in discriminatory behavior against the Plaintiff.  Defendant Carpenter is being sued in her individual capacity, only.

---

[15] *See* NDOC Administrative Regulation 740, Inmate Grievance Procedure, at 11, *available at*: https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20 740%20-%20Inmate%20Grievance%20Procedure%20-%20Temporary%20-%2011.20.2018.pdf

[16] *See* NDOC Administrative Regulation 801, Correctional Programs/Classes/Activities (3/7/2017), *available at*: https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20 801%20- %20Correctional%20Programs%20-%20Final%20-%2003072017.pdf

[17] *See* NDOC Administrative Regulation 810, Religious Faith Group Activities and Programs at 1, *available at*: https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20 810%20Religious%20Faith%20Group%20Activities%20and%20Programs%20Final%2011-15- 16.pdf.

[18] *See* NDOC Administrative Regulation 740, Inmate Grievance Procedure, at 11, *available at*: https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20 740%20-%20Inmate%20Grievance%20Procedure%20-%20Temporary%20-%2011.20.2018.pdf

24.     Defendant Marc LaFleur is a caseworker at LCC. Defendant LaFleur personally engaged in discriminatory behavior against Plaintiff. Defendant Lafleur is being sued in his individual capacity, only.

## Factual Background

### Denying Muslim Incarcerees Access to Friday Religious Services

25.     Just as other religious faith backgrounds, including Christianity and Judaism, command their adherents to observe an end-of-the-week holy day through congregational prayer and spirituality (known in Christianity and Judaism as the Sabbath), Muslims are commanded to observe Fridays through congregational prayer and spirituality known as known as jumu'ah.

26.     For several years, Defendants have unlawfully prevented Plaintiff and similarly situated Muslim incarcerees from performing jumu'ah prayers in accordance with their sincerely held religious beliefs.

27.     During the same times, Defendants have ensured that appropriate spaces were allocated to incarcerees of other religious faith groups, including Christians and Jews, to perform group prayers, whether mandated by their faith or not.

28.     Defendants also permitted incarcerees to regularly attend gatherings for secular programming, including vocational training, education opportunities, and treatment services.[19]

---

[19] *See* https://doc.nv.gov/Programs/Correctional_Programs/Correctional_Programs/ for a full list of secular programming offered by LCC to its incarcerees.

29.     Since 2017, LCC has maintained and provided incarcerees with access to a chapel area, visiting room, several activity/multipurpose rooms within each unit, and storage rooms located in each unit.

30.     The chapel is split into two areas, a smaller foyer space with an approximate capacity of 10-12 people and a larger chapel space that includes seating and a stage with an approximate capacity of at least 50.

31.     LCC also contains a visiting room that is typically used to facilitate in-person visitation. From approximately 2010-2018, it was used to host classes—for instance, Jewish incarcerees were able to use the space as a meeting spot for religious study.

32.     LCC also contains many activity/multipurpose and storage rooms that are of various sizes and capacities. These spaces are located within each unit at LCC, and as early as 2010, were used for many religious and non-religious purposes.

33.     From approximately 2010-2020, some activity rooms doubled as classrooms for substance abuse meetings and housing units where LCC installed bunks for incarcerees.

34.     Storage rooms, albeit the smallest of available spaces, were also used for a variety of nonreligious and religious purposes. In as early as 2010, the storage room located in Unit 2B of LCC was used for jumu'ah services. That same storage room also served as a meeting place for Muslim incarcerees to congregate and pray during Ramadan as early as 2016.

35.     NDOC recognizes Islam as a faith and Muslims as a faith group.  Moreover, NDOC recognizes jumu'ah prayers as a weekly worship service performed by Muslims;

however, NDOC leaves scheduling of Jumu'ah prayers as subject to approval by each facility.[20]

36.     Defendants Garett, Baker and Davis are and were at all relevant times responsible for coordinating appropriate spaces and scheduling religious programming for incarcerees at LCC.[21]

37.     For no apparent reason, LCC stopped permitting Muslim incarcerees to attend Friday jumu'ah services in 2017. Only these religious services were halted, while the religious services for other faith groups continue unhindered.

38.     Plaintiff has been requesting religious accommodations for Friday jumu'ah services to be facilitated since 2018, but Defendants have denied his requests multiple times for contradictory reasons.

39.     On February 8, 2018, Plaintiff received a letter from LCC's Religious Review Team ("RRT") in response to his requests to receive accommodations for jumu'ah prayer services. Chaplain Richard Snyder of the RRT stated that Plaintiff's request was not appropriate for consideration.

---

[20] *See* NDOC AR 810.2, Faith Group Overview, at 4, 11, *available at*:
https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20810.2%20Faith%20Group%20Overview%20Chart%20-%20Final%207-18-19.pdf
[21] *See* NDOC Administrative Regulation 810.02(3), Religious Faith Group Activities and Programs at 1, *available at*:
https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20810%20Religious%20Faith%20Group%20Activities%20and%20Programs%20Final%2011-15-16.pdf.

40.     Instead, he stated that Plaintiff's request that LCC provide jumu'ah service was RRT's responsibility—that the "use and scheduling of institutional facilities is appropriately decided at the institutional level by the Chaplain and Warden and/or Associate Warden."

41.     On June 29, 2018, Plaintiff submitted an appointment request (DOC-1561) to Defendant Davis to informally seek a resolution at the instruction of RRT. Defendant Davis responded to the appointment request on July 2, setting up an appointment on July 5 with Plaintiff.

42.     On July 5, 2018, Plaintiff met with Defendant Chaplain Davis to request permission to attend Friday jumu'ah prayer.

43.     Defendant Davis denied Plaintiff's request to accommodate an afternoon religious service, citing scheduling concerns.

44.      After the meeting, Plaintiff submitted two Inmate Request Forms to Defendant Associate Warden Carpenter about his conversation with Defendant Davis.. Plaintiff explained that his attempts had been unsuccessful and asked Defendant Carpenter to intervene to approve his accommodation. Defendant Carpenter again denied his request.

45.     Defendant Carpenter responded by stating the facility would not accommodate Plaintiff during the early afternoon, and that the only accommodation he and other Muslims would receive would be during a morning time slot of 8:00-9:15 a.m. – a time that is inconsistent with the religiously prescribed time that Muslims are required to perform jumu'ah prayers.

46.     On July 15, 2018, Plaintiff responded to Defendant Carpenter stressing that his faith required him to perform jumu'ah prayer at certain times during the early afternoon hours.

13

47.     He further suggested a series of alternative options to facilitate jumu'ah service at the prescribed time—that the facility's storage rooms that have been used for programming purposes, empty classrooms used for educational classes, dayroom in the infirmary, and vacant activity rooms could all be viable locations for a congregational service.

48.     Defendant Carpenter again denied Plaintiff's request, stating "[Plaintiff's] religion does not specify a time in AR 810. [Plaintiff] must request through RRT."

49.     Though he had already requested thru RRT and was instructed to communicate his requests to Defendants Baker, Carpenter, and Davis, Plaintiff continued to seek a solution to his religious issues. He began to contact Defendants and others through informal grievance requests and the grievance procedure.

50.     Plaintiff's requests continued to be denied outright or for dubious or contradictory reasons. In addition, Plaintiff noted in his requests that he had exhausted his remedies as per LCC's grievance policy.

51.     He submitted repeated informal and formal requests for redress to Defendants Chaplain Davis and Carpenter, among others. He also suggested alternative accommodations in the form of rooms that could service jumu'ah prayer each week at appropriate times. And he also sought redress from the RRT, as per LCC AR 810, which stated it was the Chaplain's responsibility to facilitate Plaintiff's requests.

52.     In accordance with AR 740.08, Plaintiff submitted an Informal Grievance (Log No. 200063070) on August 16, 2018 and two Continuation Forms (DOC-3097) detailing his attempts at seeking a resolution, including copies of all his previous written kites and correspondence.

14

53.     On August 20, 2018, Defendant denied Plaintiff's Informal Grievance No. 20063070279 regarding obtaining access to Friday congregational services. Defendant Lafleur stated he reviewed Plaintiff's Informal Level Requests and "there is no requirement in Administrative Regulation 810 that requires Jumah services to be held at specific times." Defendants again directed Plaintiff to seek redress via the RRT to request specific worship times, stating he had failed to do so.

54.     Plaintiff appealed Informal Grievance No. 20063070279 to a First Level Grievance, attaching correspondence he received from RRT and stated: "AR 810 does say afternoon and any activity room or non-used area will do e.g., infirmary, day room, unit 4/2/1/6 activity rooms." Plaintiff submitted his First Level Grievance on October 8, 2018 and it was received by Defendants on October 10. The following month, on November 28, 2018, Defendant Baker responded, denying Plaintiff's grievance response.

55.      Defendant Baker stated: "You were answered appropriately at the informal level. LCC is responsible to ensure all faiths are treated equal and space is provided as scheduling allows. You have been advised of the times that LCC can accommodate 'Jumah'. As stated at the informal level, submit to have your times reinstated. Grievance Partially Granted."

56.     In accordance with AR 740.10, Plaintiff appealed this decision and submitted a Second Level Grievance on December 5, 2018. Defendants responded to Plaintiff's Second Level Grievance on January 31, 2019.

57.     Defendants stated: "You were answered appropriately at the informal and first level. You have been advised of the times that LCC can accommodate 'Jumah'. Your grievance is partially granted."

15

58.    Plaintiff exhausted the grievance appeal procedure in January 2019. Defendants failed to provide an adequate remedy to Plaintiff's requests for religious accommodations. As per the second and third level responses provided by Defendants Baker and Thomas, respectively, Plaintiff's issue was already "resolved at the informal level."

59.    As per Defendant Baker, the facility would accommodate jumu'ah in accordance with "space [being] provided as scheduling allows."

60.    On March 12, 2019, in response to an Inmate Request Form Plaintiff filed that day, Chaplain Davis stated, "the only chapel time slot I have available on Friday is the 8 am to 9:15 am in Room #2. We both know that Jumah, outside the prescribed time, is not valid. I am unable to do a [general population] service between noon and 1 pm because that is [reserved]. If you want the 8 am to 9:15 am time slot in Room # 2 for a Jumah service, please let me know."

61.    On March 13, 2019, Plaintiff responded to Defendant Davis' kite response noting that Defendant Carpenter was considering allowing Plaintiff to use an activity room because she "allows services outside the chapel when she has to." Plaintiff asked Defendant Davis whether he could facilitate this request.

62.    However, Defendant Davis refused stating that Plaintiff would have to "kite [Carpenter] to get that permission" because he does not "have the authority to approve an activity room meeting."

63.    On the same day, Plaintiff followed up with Defendant Carpenter; however, she again denied his request. She responded that the morning time slot was the only available accommodation and that Plaintiff's prayer issue had "already been addressed with the RRT."

64.   Defendants violated its own policies that require that "if a chapel is not available, the Warden/designee will designate an area available for religious activities that meets the security needs of the institution/facility," and that "in scheduling religious activities, the Chaplain will seek to accommodate Faith Groups, including those that call for particular times, and calendar and lunar dates for specific services or ceremonies." [22]

65.   Defendants failed to follow their administrative regulations in accommodating Plaintiff's repeated requests for congregational prayer and failed to cite any legitimate safety or security concerns in denying those requests. As such, Defendants have hindered Plaintiff and other Muslim incarcerees' ability to perform Friday religious services and congregational prayers, in violation of their written policy.

66.   Defendants likewise do not treat incarcerees of other faiths the same as Muslims, nor do they subject non-Muslims to the same policies. Defendants, for instance, permit Christian incarcerees to perform weekly religious services of varying duration, time, and size.

67.   Additionally, Christian incarcerees are permitted to attend weekly religious study classes of varying duration and size during the weekdays and weekends.

68.   Neither Christian incarcerees nor incarcerees that subscribe to any other faith background, besides Islam, have been met with unreasonable scheduling and room availability hurdles in response to requests for religious services.

---

[22] NDOC Administrative Regulation 810.3(5)(B)(2), Religious Practice Manual at 7, *available at:* https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/Religious%20Practice%20Manual%20-%2009052017_1.PDF

69.     Furthermore, Defendants permit nonreligious incarcerees of approximately 20-30 to meet and congregate regularly for nonreligious purposes.

70.     For example, nonreligious incarcerees regularly attend gatherings for nonreligious purposes, including education, drug counseling, playing sports or board games, among other activities.

71.     In fact, LCC has a variety of activity, multipurpose, and storage rooms that are designated for religious and non-religious gatherings.

72.     Defendants have imposed and continue to impose a substantial burden upon the rights of Plaintiff, and other Muslims similarly situated, to the free exercise of religion, and discriminate, and continue to discriminate, against Plaintiff on the basis of religion or religious denomination in violation of, among other laws, RLUIPA. 42 U.S.C. § 2000cc(b)(2).

73.     Defendants are capable of permitting Plaintiff and similarly situated Muslim incarcerees to perform Friday religious services and congregational prayers because they permit other incarcerees at its facilities to perform regular religious and non-denominational services. Moreover, Defendants have designated the chapel and other rooms for such congregational gatherings.

74.     In fact, LCC used to facilitate congregational jumu'ah services without incident prior to discontinuing them in 2017. Moreover, jumu'ah services were held during religiously prescribed times.

75.     In August 2020, LCC again provided a jumu'ah service in its chapel area for several weeks during the prescribed timeframe, from 12:30-1:45p.m. However, LCC quickly shut its service down citing "recurring spikes of positive COVID-19 cases."

18

76.     The fact that LCC has facilitated jumu'ah in the past and recently for several weeks is evidence that Defendants are capable of providing appropriate spaces to its Muslim incarcerees so that they could perform their weekly jumu'ah services, and that their policies of denying them the ability to continue their jumu'ah services are both discriminatory and treat Plaintiff and its Muslim incarcerees on less than equal terms than incarcerees of other faith groups and nonreligious incarcerees.

77.     Defendants have failed to enforce the applicable laws, policies, directives, ordinances, and regulations in the least restrictive means possible.  As other prisons and jails do across the country—including all state prisons and jails in Alaska, for instance—Defendants could have, but did not, allow Plaintiff and other Muslims to complete their prayers in groups and fulfill their weekly obligation to perform jumu'ah.

78.     Defendants have unlawfully imposed a policy and practice for Muslims that substantially burdens the rights of Plaintiff, and Muslims similarly situated, to the free exercise of religion.

79.     Defendants have allowed incarcerees who are not Muslim to practice their faith in a manner similar to the manner in which Plaintiff, and Muslims similarly situated, desire to practice their faith. Christian incarcerees, for example, pray together in groups on a daily basis and informally gather for Bible study sessions led by fellow Christian incarcerees in addition to regular weekly congregational services.

80.     Defendants have imposed barriers that unreasonably limit religious exercise, discriminate against Plaintiff and other similarly situated Muslim incarcerees on the basis of their religious denominations, and treat Plaintiff and other Muslim incarcerees on less than equal terms than other religious and non-religious incarcerees.

19

81.     Defendant's policies and practices also subject Plaintiff and other Muslims to disparate treatment by denying them their rights to perform Friday religious services and congregational prayers.

82.     The substantial burden that Defendants' policies and practices impose on Plaintiff is not necessary, or even the least restrictive means, to achieving any compelling state interest.

83.     Defendants have taken no further action to address these grievances or to add jumu'ah prayers to the religious programs calendar.

84.     By denying and/or refusing to process Plaintiff's requests and grievances, and by refusing to provide Muslim incarcerees access to jumu'ah prayers, Defendants have imposed a substantial burden upon the rights of Plaintiff and other similarly situated Muslim incarcerees to the free exercise of religion.

85.     Defendants have discriminated, and continue to discriminate, against Plaintiff and other similarly situated Muslim incarcerees on the basis of religion or religious denomination in violation of, among other laws, RLUIPA and the First and Fourteenth Amendments to the United States Constitution.

86.     Defendants have further subjected Plaintiff and other Muslim incarcerees similarly situated to disparate treatment by denying them the right to perform jumu'ah prayer.

87.     Plaintiff has exhausted the remedies available to him.

## COUNT I
## Violation of Religious Land Use and Institutionalized Persons Act
### (Religious Exercise)

### (against official capacity Defendants only)

88.     Plaintiff incorporates by reference all other paragraphs in this Complaint.

89.     The Religious Land Use and Institutionalized Persons Act ("RLUIPA") limits the ability of state prisons to impose substantial burdens on the religious exercise of incarcerees. 42 U.S.C. § 2000cc-1. Congress enacted RLUIPA … in order to provide very broad protection for religious liberty" to prisoners. *Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015).

90.     Plaintiff has a sincerely held religious belief that he is required to participate in weekly Friday religious services and congregational prayers.

91.     Defendants have arbitrarily and unjustly established a religious services policy and practice that prohibits Plaintiff and other Muslims from performing Friday religious services and congregational prayers in violation of RLUIPA.

92.     The individual capacity Defendants have enforced this policy knowing that the official capacity Defendants expect them to.

93.     Defendants' policies and practices do not permit Plaintiff and other Muslim incarcerees to perform Friday jumu'ah services in violation of RLUIPA.

94.     Defendants have deprived and continue to deprive Plaintiff and other Muslim incarcerees of their rights under RLUIPA, 42 U.S.C. § 2000cc(a) *et seq.*, by both imposing and implementing an unconstitutional and discriminatory policy and practice that substantially burdens their religious exercise on a daily basis.

95.     Defendants' actions have deprived and continue to deprive Plaintiff and other Muslim incarcerees similarly situated of their right to be free from a government imposed substantial burden on their religious exercise as secured by RLUIPA.

96.     Additionally, Defendants' religious services policy and practice arbitrarily and unjustly caused and continues to cause Plaintiff and similarly situated Muslim incarcerees harm because it forces them to sacrifice their sincerely held religious beliefs.

97.     Defendants have not established a religious services policy that prohibits incarcerees of other faiths from participating in or conducting religious congregational prayers and services.

98.     Defendants' imposition of such a burden is not in furtherance of a compelling government interest and is not the least restrictive means of furthering any governmental interest, compelling or otherwise.

99.     Plaintiff is entitled to a declaration that the above-described policies are a substantial burden to the religious exercise of Plaintiff and other Muslim incarcerees similarly situated in violation of RLUIPA.

100.    Defendants' unlawful actions caused Plaintiff harm and he is therefore entitled to injunctive and declaratory relief, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff requests this Honorable Court grant declaratory relief and injunctive relief in the form requested in the Prayer for Relief below.  Plaintiff further requests all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT II
## Violation of Religious Land Use and Institutionalized Persons Act
## (Equal Terms)

### (against all Defendants)

101.    Plaintiff incorporates by reference all other paragraphs in this Complaint.

102.    Defendants have treated Plaintiff and other similarly situated Muslim incarcerees on less than equal terms than incarcerees of other faiths by prohibiting them from performing Friday jumu'ah services and at the same time allowing incarcerees of other faiths, including Christians and Jews, to perform congregational prayers, whether mandated or not.

103.    Defendants treat congregational activity differently and less favorably when it is performed by Muslim incarcerees than when it is performed by incarcerees of other faiths or when is it done for non-religious purposes.

104.    Defendants' discriminatory policies identified above are not in furtherance of a compelling government interest and are not the least restrictive means of furthering any governmental interest, compelling or otherwise.

105.    Plaintiff is entitled to a declaration that the above-described policies discriminate against him and other Muslim incarcerees similarly situated, are not justified by a compelling government interest, and are in violation of RLUIPA.

106.    Defendants' unlawful actions caused Plaintiff harm and he is entitled to injunctive and declaratory relief in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff requests this Honorable Court grant declaratory relief and injunctive relief in the form requested in the Prayer for Relief below. Further, Plaintiff requests

all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT III
### Violation of First and Fourteenth Amendment to the U.S. Constitution (Free Exercise of Religion)

### (against all Defendants)

107.    Plaintiff incorporates by reference all other paragraphs in this Complaint.

108.    The Free Exercise Clause of the United States Constitution provides: "Congress shall make no law … prohibiting the free exercise [of religion]." The Free Exercise Clause applies with full force and effect to the acts of state and local government entities and officials pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

109.    Each of the RLUIPA claims (Counts I-II) are also actionable under the Free Exercise Clause, because Defendants' actions reflect imposition of substantial religious burdens, as well as official policies and practices of non-neutrality, upon Plaintiff and similarly situated Muslim incarcerees.

110.    Defendants imposed and continue to impose a substantial burden on the rights to free exercise of religion upon Plaintiff and other Muslim incarcerees similarly situated by prohibiting them from performing Friday jumu'ah services and at the same time allowing incarcerees of other faiths, including Christians and Jews, to perform congregational prayers, whether mandated or not, in violation of the Free Exercise Clause of the First and Fourteenth Amendments to the United States Constitution.

111.    Defendants have arbitrarily and unjustly established a religious services policy and practice that prohibits Plaintiff and other similarly situated Muslim incarcerees from performing Friday religious services and congregational prayers.

112.    Defendants have deprived and continue to deprive Plaintiff of his right to the free exercise of religion as secured by the First Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment to the United States Constitution, by both imposing and implementing an unconstitutional and discriminatory religious services policy and practice that substantially burdens Plaintiff's religious exercise.[23]

113.    Additionally, Defendants' religious services policy and practice arbitrarily and unjustly caused and continues to cause Plaintiff and similarly situated Muslim incarcerees harm because it forces them to sacrifice their core sincerely held religious beliefs.

114.    Defendants have not established a religious services policy that prohibits incarcerees of other faiths from participating in or conducting religious congregational prayers and services.

115.    Defendants' discriminatory policies identified above have substantially burdened their religious exercise on a daily basis.

116.    By imposing and implementing the above-described religious services policy and practice, Defendants have imposed a substantial burden on Plaintiff's exercise of religion at LCC.

---

[23] The current applicable standard for Free Exercise clause violations is currently before the Supreme Court in *Fulton v. Philadelphia*, 19-123. Defendants' conduct violates the First Amendment under whatever standard the Supreme Court promulgates in that case. Plaintiff reserves the right to seek to amend the Complaint to make its allegations consistent with the forthcoming *Fulton* standard should this Court deem such amendment necessary.

117.    Defendants' actions identified above chill and impose a substantial burden upon rights of Plaintiff and other similarly situated Muslim incarcerees to the free exercise of religion.

118.    Imposition of such a burden is not in furtherance of a compelling government interest and is not the least restrictive means of furthering any governmental interest, compelling or otherwise.

119.    Defendants' unlawful actions caused Plaintiff harm and Plaintiff is entitled to declaratory relief, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees.Plaintiff is entitled to a declaration that the above-described policies are a substantial burden to his free exercise religion and that of Muslim incarcerees similarly situated, are not justified by a compelling government interest, and are in violation of their First and Fourteenth Amendment rights to their free exercise of religion.

120.    Defendants' unlawful actions caused Plaintiff harm and Plaintiff is entitled to declaratory relief, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees.

WHEREFORE, Plaintiff requests this Honorable Court grant declaratory relief and injunctive relief in the form requested in the Prayer for Relief below. Further, Plaintiff requests compensatory and punitive damages against the Defendants sued in their individual capacity, only, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT IV
### Violation of Fourteenth Amendment to the U.S. Constitution
### (Equal Protection)

### (against all Defendants)

121.    Plaintiff incorporates by reference all other paragraphs in this Complaint.

122.    The Fourteenth Amendment's Equal Protection Clause provides that "No state shall … deny to any person within its jurisdiction the equal protection of the laws." Equal protection asks whether Government action adversely affects a "suspect class," such as by drawing distinctions based on race, ethnicity, national origin, or religion. See, e.g., *Harbin–Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005). Religious distinctions are "inherently suspect." *City of New Orleans v. Dukes*, 166 427 U.S. 297, 303 (1976).

123.    Defendants have discriminated and continue to discriminate against Plaintiff and other Muslim incarcerees similarly situated on the basis of their Islamic faith by prohibiting them from performing Friday jumu'ah services and at the same time allowing incarcerees of other faiths, including Christians and Jews, to perform congregational prayers, whether mandated or not, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

124.    Defendants' religious services policy and practice arbitrarily and unjustly caused and continues to cause Plaintiff and similarly situated Muslim incarcerees harm because it forces them to sacrifice their sincerely held religious beliefs.

125.    Defendants have imposed onerous restrictions on Plaintiff that have not been imposed on incarcerees of other faiths at LCC.

27

126.     Defendants' discriminatory policies identified above are not in furtherance of a compelling government interest and are not the least restrictive means of furthering any governmental interest, compelling or otherwise.

127.     Plaintiff is entitled to a declaration that the above-described policies discriminate against Plaintiff and other Muslim incarcerees similarly situated, are not justified by a compelling government interest, and are in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

128.     Defendants' unlawful actions caused Plaintiff harm and Plaintiff are entitled to injunctive and declaratory relief, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff requests this Honorable Court grant declaratory relief and injunctive relief in the form requested in the Prayer for Relief below. Further, Plaintiff requests compensatory and punitive damages against the Defendants sued in their individual capacity, only, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT V
## Violation of First and Fourteenth Amendment to the United States Constitution
### (Establishment Clause)

### (against all Defendants)

129.     Plaintiff incorporates by reference all other paragraphs in this Complaint.

130.     The Establishment Clause of the First Amendment of the Constitution of the United States provides, "Congress shall make no law respecting an establishment of religion." The Establishment Clause applies with full force and effect to the acts of state and local

government entities and officials pursuant to the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

131.    While the neutral provision of religious programming is an appropriate accommodation of incarcerees' religious beliefs, Defendants' prohibition of Muslim incarcerees participating in weekly jumu'ah services reflects Defendants' preference for Christianity and Judaism and overall discriminatory approach.

132.    By permitting Christians and Jews to congregate for their weekly Sabbath services and preventing Plaintiff and Muslim incarcerees similarly situated, Defendants convey to reasonable observers a message of endorsement of Christianity and Judaism and a message of disfavor of Islam.

133.    By violating the Establishment Clause as set forth above, the defendants have, under color of statute, ordinance, regulation, custom, and/or usage, deprived Plaintiff of rights secured by the First and Fourteenth Amendments of the U.S. Constitution, entitling him to relief under 42 U.S.C. § 1983.

WHEREFORE, Plaintiff requests this Honorable Court grant monetary, declaratory and injunctive relief in the form requested in the Prayer for Relief below. Further, Plaintiff requests compensatory and punitive damages against the Defendants sued in their individual capacity, only, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT VI
## Violation of the Nevada Constitution

### (against all Defendants)

134.     Plaintiff incorporates by reference all other paragraphs in this Complaint.

135.     The Nevada Constitution art. I, § 4 provides: "The free exercise and enjoyment of religious profession and worship without discrimination or preference shall forever be allowed in this State, and no person shall be rendered incompetent to be a witness on account of his opinions on matters of his religious belief…"

136.     Defendants' actions have violated and continue to violate the Nevada Constitution for the same reasons they violate the Free Exercise Clause (Count III) claims referenced above.

137.     Defendants' unlawful actions caused Plaintiff harm and his is therefore entitled to injunctive and declaratory relief, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff requests this Honorable Court grant declaratory relief and injunctive relief in the form requested in the Prayer for Relief below.  Further, Plaintiff requests compensatory and punitive damages against the Defendants sued in their individual capacity, only, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

**Prayer for Relief**

Plaintiff requests this Honorable Court enter judgment in his favor and against Defendants on each and every count in this complaint, and grant the following relief:

1.      A declaratory judgment that Defendants' policies, practices, and customs violate the First and Fourteenth Amendments to the Constitution of the United States, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 1983 and art. I, § 4 of the Nevada Constitution;

2.      An injunction that requires Defendants to provide Muslim incarcerees an appropriate space for them to congregate for the purpose of performing their Friday jumu'ah services during the prescribed timeframes in accordance with their sincerely-held religious beliefs;

3.      An award of compensatory and punitive damages under 42 U.S.C. § 1983.

4.      An award of attorneys' fees, costs, and expenses of all litigation, under 42 U.S.C. § 1988 and 2000cc-2(d); and,

5.      All such other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

NOW COMES Plaintiff, by and through his undersigned counsel, and hereby demand

a jury trial of the above-referenced causes of action so triable.

Respectfully,

CAIR LEGAL DEFENSE FUND

BY: <u>/s/ Lena Masri</u>
LENA F. MASRI (20251)
lmasri@cair.com
GADEIR I. ABBAS (20257)
gabbas@cair.com
JUSTIN SADOWSKY (20128)
jsadowsky@cair.com
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787

ALLEN LICHTENSTEIN
allaw@lvcoxmail.com

3315 Russell Road, No. 222
Las Vegas, NV 89120

*Attorneys for Plaintiff*

Dated:  March 26, 2021