# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

SAID ELMAJZOUB,

    Plaintiff

v.

SCOTT DAVIS, et al.,

    Defendants

Case No.: 3:19-cv-00196-MMD-CSD

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 60, 61

    This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

    Before the court is Defendants' motion for summary judgment. (ECF Nos. 60, 60-1 to 60-9.) Plaintiff filed a response (ECF Nos. 67, 67-1, 67-2), and Defendants filed a reply (ECF No. 70). Plaintiff has also filed a motion for summary judgment. (ECF Nos. 61, 61-1 to 61-18.) Defendants filed a response (ECF No. 66), and Plaintiff filed a reply (ECF No. 71).

    After a thorough review, it is recommended that Plaintiff's motion be granted in part and denied in part, and that Defendants' motion be denied.

## I. BACKGROUND

    Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding with this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). Plaintiff filed his original complaint while proceeding pro se. (ECF No. 1-1.) He subsequently obtained counsel, and a first amended complaint (FAC) was filed. (ECF No. 41.) The court screened the FAC and allowed Plaintiff to proceed with claims under RLUIPA, the First Amendment's Free Exercise and Establishment

Clauses, the Fourteenth Amendment's Equal Protection Clause, and Article 1, Section 4 of the Nevada Constitution. Plaintiff's claims are based on allegations that he is Muslim, and Defendants denied his request to engage in his sincerely held religious belief of participating in the weekly congregational prayer of Jumu'ah[1] at its prescribed time (early in the afternoon on Fridays). Plaintiff further alleges that while Defendants denied his request to participate in Jumu'ah early Friday afternoons, they have dedicated space to other faith groups, including Christian and Jewish inmates, to perform their congregational prayers.

Plaintiff is proceeding against the following defendants: NDOC Director Charles Daniels (official capacity only), NDOC Deputy Director of Programs Harold Wickham (official capacity only), former NDOC Deputy Director of Programs Kim Tobias Thomas (individual capacity only), Lovelock Correctional Center (LCC) Warden Tim Garrett (official capacity only), former LCC Warden Renee Baker (individual capacity only), former LCC Associate Warden Tara Carpenter (individual capacity only), LCC Chaplain Scott Davis (individual and official capacities), and LCC Caseworker Marc LaFleur (individual capacity only). (ECF No. 40.)

Defendants move for summary judgment. First, they argue there is no evidence Plaintiff's religious practice was substantially burdened under the First Amendment Free Exercise Clause or RLUIPA because Plaintiff was offered alternative time slots on Friday mornings to participate in Jumu'ah, and Plaintiff was allowed to engage in group worship on the yard and personal prayer in his cell. They further argue they are entitled to summary judgment on the First Amendment Free Exercise and RLUIPA claims because there are penological interests that justify limiting the number of inmates in and around the LCC chapel. Second, Defendants

---

[1] Also referred to in the briefing as "Jummah."

1 contend that Plaintiff has not put forth evidence to substantiate his equal protection claim.

2 Finally, Defendants assert they are entitled to qualified immunity. (ECF No. 60.)[2]

3    Plaintiff also moves for summary judgment. Plaintiff argues there is no dispute that

4 Defendants refused to allow Plaintiff to pray in congregation at Jumu'ah early Friday afternoons,

5 and this refusal substantially burdened his religious practice under RLUIPA. Plaintiff

6 acknowledges safety and security may be compelling government interests, but he claims the

7 interests Defendants put forth for refusing Plaintiff's requested accommodation are not

8 compelling.  In any event, Plaintiff argues prison officials failed to consider less restrictive

9 means of achieving their objectives. Plaintiff asserts Defendants violated the Free Exercise

10 Clause for the same reasons that RLUIPA is violated. Finally, Plaintiff argues that Defendants

11 violated the Establishment Clause and the Equal Protection Clause when they allowed Christians

12 and Jewish inmates to congregate for their weekly prayer services.

13                    **II. LEGAL STANDARD**

14    The legal standard governing this motion is well settled: a party is entitled to summary

15 judgment when "the movant shows that there is no genuine issue as to any material fact and the

16 movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

17 *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the

18 evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

19 *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

20 of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

21 judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

22

23 _____

[2] Defendants' motion does not raise Plaintiff's Establishment Clause claim or his claim under Article 1, Section 4 of the Nevada Constitution.

3

1  other hand, where reasonable minds could differ on the material facts at issue, summary

2  judgment is not appropriate. *Anderson*, 477 U.S. at 250.

3        "The purpose of summary judgment is to avoid unnecessary trials when there is no

4  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

5  F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

6  of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

7  U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

8  one party must prevail as a matter of law"). In considering a motion for summary judgment, all

9  reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

10  *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

11  *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

12  nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

13  477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

14  determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

15  *Anderson*, 477 U.S. at 249.

16        In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

17  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

18  come forward with evidence which would entitle it to a directed verdict if the evidence went

19  uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

20  the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

21  *Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

22  omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

23  defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

4

1  an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

2  party cannot establish an element essential to that party's case on which that party will have the

3  burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

4         If the moving party satisfies its initial burden, the burden shifts to the opposing party to

5  establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

6  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

7  dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

8  be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

9  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

10 (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

11 by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

12 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

13 pleadings and set forth specific facts by producing competent evidence that shows a genuine

14 dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

15                              **III. DISCUSSION**

16 **A. UNDISPUTED FACTS**[3]

17         Plaintiff is Muslim, and at all relevant times, he was incarcerated in NDOC and housed at

18 Lovelock Correctional Center (LCC). (ECF No. 60 at 3; Pl. Aff., ECF No. 61-2 ¶¶ 1, 29.) It is

19 Plaintiff's sincerely held belief that he must participate in the congregative prayer service of

20 Jumu'ah on Fridays. (Pl. Aff., ECF No. 61-2 at 7 ¶¶ 31, 33; Baker Depo., ECF No. 61-3 at

21

22
23

[3] Defendants assert that they dispute Plaintiff's facts 14-16, 19-20, 24-33, 34-63, and 64-71 on the basis that there was considerable flexibility associated with the times for acceptable prayer services; however, as will be discussed, *infra*, Defendants provide no admissible evidence to support this assertion.

1  27:16-24, Carpenter Depo., ECF No. 61-4 at 18:11-22.) Plaintiff sincerely believes that Jumu'ah

2  must take place early Friday afternoons, after the sun has passed its zenith, but before the

3  afternoon prayer, known as Asr. (Pl. Aff., ECF No. 61-2 at 7-8 ¶ 38.)

4      Defendants dispute the prayer must take place in the early afternoon. Instead, they

5  contend there is considerable flexibility associated with the times for acceptable prayer services,

6  and these times change based on the use of the lunar calendar by Muslims. Defendants' basis for

7  this dispute is a statement in Ms. Carpenter's declaration that Chaplain Snyder reached out to the

8  Muslim community at her request, and this was their response. (Carpenter Decl., ECF No. 60-1

9  at 3 ¶ 9.) The statements attributed to members of the Muslim community, however, are

10  inadmissible hearsay.  Defendants provide no admissible evidence to refute Plaintiff's sincerely

11  held belief regarding the time during which Jumu'ah must occur. Moreover, the Supreme Court

12  recognized in *O'Lone v. Estate of Shabazz*, that "Jumu'ah is commanded by the Koran and must

13  be held every Friday after the sun reaches its zenith and before the Asr, or afternoon prayer." 482

14  U.S. 342, 345 (1987). Therefore, the court finds it is undisputed that Plaintiff must participate in

15  Jumu'ah early Friday afternoons.

16      NDOC's Faith Group Overview provides, among other things, personal and group

17  worship practices recognized by NDOC for each faith group. For the Islam/Muslim faith group,

18  the Faith Group Overview provides these inmates engage in personal prayer five times a day for

19  10 minutes (before sunrise, noon, afternoon, before sunset, and after sunset). For group worship,

20  they meet weekly for worship and study, and weekly on Friday *midday* for Jumu'ah prayer. The

21  overview states that the worship is subject to scheduling approval. (ECF No. 60-5 at 12; ECF

22  No. 60-6 at 12.) NDOC's Religious Practice Manual, effective September 5, 2017, states that if

23

1 the chapel is not available, the warden/designee will designate an area available for religious

2 activities that meets the security needs of the institution/facility. (ECF No. 61-18 at 36.)

3       Plaintiff approached Chaplain Davis several times to try and schedule time early Friday

4 afternoons for Plaintiff and other Muslims to gather for Jumu'ah. (Pl Aff., ECF No. 61-2 at 8

5 ¶ 39; Carpenter Decl., ECF No. 60-1 at 2 ¶ 2.) Plaintiff's request to participate in Jumu'ah early

6 Friday afternoons was refused. (Pl. Aff., ECF No. 60-1 at  8 ¶¶ 39-42; ECF No. 61-10; ECF No.

7 61-17; Carpenter Depo., ECF No. 61-4 at 23:13-24:12.)

8       At the time Plaintiff made his request, general population (GP) inmates used the chapel in

9 the morning from 8:00 a.m. to 10:45 a.m., and protective segregation (PS) inmates used the

10 chapel in the afternoon from 12:00 p.m. until 3:15 p.m., and the GP inmates then had use of the

11 chapel in the evenings. (Carpenter Decl., ECF No. 60-1 at 3 ¶ 7; Davis Decl., ECF No. 60-3 at 3

12 ¶ 6; Baker Depo., ECF No. 61-3 at 58:22-59:8, 66:10-21, 106:3-9.)  Plaintiff was told that he

13 could participate in Jumu'ah on Friday mornings between 8:00 and 9:15 a.m. or between 9:15

14 and 10:30 a.m. Plaintiff declined these alternative offers. (Carpenter Decl., ECF No. 60-1 at 3

15 ¶¶ 6, 10; Carpenter Depo., ECF No. 61-4 at 23:17-25, 24:1-8; ECF No. 61-17.)

16       Plaintiff filed an informal level grievance on August 16, 2018, stating that Jumu'ah

17 service was cancelled and no alternative service was made despite several attempts/suggestions.

18 He asked that the service be allowed in the chapel or other empty room for one hour on Fridays.

19 (ECF No. 6, 8-10.) LaFleur responded that there is no requirement in Administrative Regulation

20 (AR) 810 that Jumu'ah services be held at specific times. Plaintiff was told that if he thought his

21 religious rights were being violated, he should follow AR 810 and request, through the Religious

22 Review Team (RRT), to have specific worship times added as a requirement to the AR. LaFleur

23 also said the Faith Group Overview description for Jumu'ah indicated it was "subject to

7

scheduling." Plaintiff was advised that PS inmates were scheduled to access those areas for the times requested. (ECF No. 60-2 at 7.)

Plaintiff filed a first level grievance on October 8, 2018. He pointed out that AR 810 did say Jumu'ah was supposed to be held in the afternoon, and he reiterated his request that it be held in any activity room or other room that was not in use. (ECF No. 60-2 at 4.) Baker responded that Plaintiff was answered appropriately at the informal level. She said that LCC must ensure all faiths are treated equally and that space is provided as scheduling allows. Plaintiff had been advised of the times that LCC could accommodate Jumu'ah. He was advised to submit to have his times reinstated. (ECF No. 60-2 at 5.)

Plaintiff filed a second level grievance on December 5, 2018. (ECF No. 60-2 at 2.) Thomas responded that Plaintiff was answered appropriately at the informal and first levels, and he had been advised of the times LCC could accommodate Jumu'ah. (ECF No. 60-2 at 3.)

Chaplain Davis responded to a request submitted by Plaintiff on March 12, 2019. Davis noted that the chapel was available on Friday from 8:00 to 9:15 a.m., but he also stated: "We both know that [Jumu'ah], outside the prescribed time, is not valid." (ECF No. 61-17.)

There were one or two Islamic inmates in PS, and there have to be five inmates to have a chapel group. Therefore, there were no Muslim chapel services going on for the PS inmates in the afternoon. (Davis. Depo., ECF No. 61-5 at 24:6-13.) Baker was not aware of any religious purpose behind the PS inmates being at chapel early Friday afternoons. (Baker Depo., ECF No. 61-3 at 71:21-72:1.)

Other NDOC facilities have allowed Muslims to pray Jumu'ah early Friday afternoons, including those with different custody levels. (NDOC 30(b)(6) Depo., ECF No. 61-12 at 15:13-15, 62-64; Baker Depo., ECF No. 61-3, 56:3-15; Pl. Aff., ECF No. 61-2 at 6 ¶ 27.)

As part of a partial settlement in *Shaw v. Davis*, 3:18-cv-00551-MMD-CLB, beginning August 1, 2020, the schedule was changed so that Jumu'ah services take place at LCC on Fridays between 12:30 and 1:45 p.m. (ECF No. 60-7 at 4; ECF No. 61-13; NDOC 30(b)(6) Depo., ECF No. 61-12 at 18:18-22.)

Changing the schedule was simple, and it was just a matter of switching the GP and PS chapel schedules around. The schedule change was implemented with no evidence of security issues or negative feedback from staff or inmates. (NDOC 30(b)(6) Depo. 18-21, 106:17-23; Davis Depo., ECF No. 61-5 at 26-29; Garrett Depo., ECF No. 61-16 at 39:12-15, 45:22-47:17; Pl. Aff., ECF No. 61-2 ¶ 43.) It was possible for LCC to have changed the schedule prior to the settlement in *Shaw* to allow Muslims to pray in congregation early Friday afternoons. (NDOC 30(b)(6) Depo., ECF No. 61-12 at 18:2-7.)

## B. RLUIPA

### 1. Standard

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution...even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). RLUIPA is "more generous to the religiously observant than the Free Exercise Clause." *Jones v. Slade,* 23 F.4th 1124, 1139 (9th Cir. 2022) (citations omitted).

"The Supreme Court has recognized RLUIPA as...[a] 'congressional effort[] to accord religious exercise heightened protection from government-imposed burdens[.]'" *Greene* v. *Solano Cnty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005)). "As such, RLUIPA is to be 'construed broadly in favor of protecting an inmate's right to exercise his religious beliefs.'" *Jones,* 23 F.4th at 1140 (quoting *Warsoldier v.*

9

1  *Woodford,* 418 F.3d 989, 995 (9th Cir. 2005)); *see also Johnson v. Baker,* 23 F.4th 1209, 1214

2  (9th Cir. 2022) (citation omitted). However, "[c]ourts are expected to apply RLUIPA's standard

3  with due deference to the experience and expertise of prison and jail administrators in

4  establishing necessary regulations and procedures to maintain good order, security and

5  discipline, consistent with consideration of costs and limited resources." *Hartmann v. Cal. Dep't.*

6  *of Corr.*, 707 F.3d 1114, 1124 (9th Cir. 2013) (internal quotation marks and citation omitted).

7          "Under RLUIPA, the challenging party bears the initial burden of proving that his

8  religious exercise is grounded in a sincerely held religious belief ..., and that the government's

9  action substantially burdens his religious exercise." *Holt v. Hobbs,* 574 U.S. 352, 360-61 (2015)

10  (citations omitted); *see also Jones,* 23 F.4th at 1140; *Johnson,* 23 F.4th at 1214.

11          If the plaintiff makes a showing of a substantial burden on the exercise of his religion, the

12  court's analysis then turns to whether the defendant has established that the burden furthers "a

13  compelling governmental interest," and does so "by the least restrictive means." 42 U.S.C.

14  § 2000cc-1(a), (b); *Holt,* 574 U.S. at 362 (citation omitted); *Jones,* 23 F.4th at 1141 (citations

15  omitted); *Greene*, 513 F.3d at 988.

16          **2. Sincerely Held Belief**

17          Courts "have read RLUIPA's reference to 'any exercise of religion' literally (and thus

18  broadly in favor of inmates) to include not only 'the belief and profession' of faith, but also

19  individual 'physical acts [such as] assembling with others for a worship service [or] participating

20  in sacramental use of bread and wine.'" *Jones* 23 F.4th at 1141 (quoting *Greene*, 513 F.3d at

21  987, alteration original, other citations omitted). RLUIPA "bars inquiry into whether a particular

22  belief or practice is 'central' to a prisoner's religion." *Greene*, 513 F.3d at 987 (quoting *Cutter*,

23  544 U.S. at 725 n. 13; 42 U.S.C. § 2000cc-5(7)(A)). The "initial RLUIPA step requires a narrow

1   inquiry focused on (1) the specific religious practice at issue and (2) the specific practitioner."

2   *Johnson,* 23 F.4th 1209.

3       Here, the specific religious exercise at issue is participation in the congregational prayer

4   service of Jumu'ah early Friday afternoons. Courts have recognized that "'the exercise of

5   religion often involves not only the belief and profession but the performance of … physical acts

6   [such as] assembling with others for a worship service[.]'" *Greene*, 513 F.3d at 987 (quoting

7   *Cutter*, 544 U.S. at 720) ("the religious exercise at issue in Greene's lawsuit is not his ability to

8   practice his religion as a whole, but his ability to engage in group worship").

9       Defendants do not dispute Plaintiff sincerely believes he has to congregate in prayer for

10  Jumu'ah. The Supreme Court has concluded there was no question the members of the Islamic

11  faith had a sincerely held religious belief that compelled attendance at Jumu'ah. *O'Lone v. Estate*

12  *of Shabazz,* 482 U.S. 342 (1987).[4]

13      Defendants contend, however, that Plaintiff's faith did not require Jumu'ah to take place

14  at a specific time. (Carpenter Decl., ECF No. 60-1 at 3 ¶ 9) As was noted, *supra,* Defendants'

15  support for their position is inadmissible hearsay.  Consequently, there is no admissible evidence

16  in the record that there is "considerable flexibility" in the time that Jumu'ah prayer service could

17  take place.

18      Therefore, the court finds it is undisputed that Plaintiff had a sincerely held belief he must

19  participate in Jumu'ah early Friday afternoons.

20

21  [4] As will be discussed further, *infra, O'Lone* involved a challenge under the First Amendment's
    Free Exercise Clause. The analysis of the first two elements of Free Exercise Clause and

22  RLUIPA claims —sincerely held belief and substantial burden—are similar. If those elements
    are established, the standard under the Free Exercise Clause is whether the burden is reasonably

23  related to a legitimate penological purpose, while the standard under RLUIPA is whether the
    burden is supported by a compelling government interest that is achieved by the least restrictive
    means.

### 3. Substantial Burden

"In the context of a prisoner's constitutional challenge to institutional policies, [the Ninth Circuit] has held a substantial burden occurs 'where the state...denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on the adherent to modify his behavior and to violate his beliefs." *Hartmann*, 707 F.3d at 1125 (citation and quotation marks omitted); *see also Jones*, 23 F.4th at 1142. A "substantial burden" on "religious exercise" "must impose a significantly great restriction or onus upon such exercise." *Greene*, 513 F.3d at 987 (quoting *San Jose Christian Coll. V. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)); *Jones*, 23 F.4th at 1142 (citation omitted).

"A policy may impose a substantial burden on religious exercise in a number of ways." *Jones,* 23 F.4th at 1140. "A regulation may impact religious exercise directly, by forbidding conduct that an inmate believes he is religiously compelled to do, *see O'Lone v. Est. of Shabazz,* 482 U.S. 342, 344-45 … (1987) (assigning Muslim prisoners to work schedule that prevented them from attending Friday prayer services commanded by Qur'an), or by compelling an inmate to do that which he believes he is religiously forbidden from doing, *see Holt,* 574 U.S. at 355, 359 … (requiring Muslim prisoner to violate religious beliefs that forbade trimming his beard); *Warsoldier,* 418 F.3d at 992, 995-96 (requiring Native American prisoner to violate religious beliefs that forbade cutting his hair)." *Id.* "More subtly, a regulation may impact religious exercise indirectly, by encouraging an inmate to do that which he is religiously prohibited or discouraged from doing, *see Greenhill v. Clarke*, 944 F.3d 243, 259-51 (4th Cir. 2019) (withholding participation in religious services 'as an incentive to improve inmate conduct'), or by discouraging an inmate from doing that which he is religiously compelled or encouraged to do, *see Jones v. Carter,* 915 F.3d 1147, 1150-51 (7th Cir. 2019) (discouraging inmates from

1  choosing halal meals by charging for halal meat); *Shilling v. Crawford,* 536 F.Supp.2d 1227, 1233

2  (D. Nev. 2008) (offering Jewish prisoner choice between staying at a medium security facility

3  without kosher meals or transferring to a maximum security facility with kosher meals), *aff'd*

4  377 F.Appx. 702 (9th Cir. 2010)." *Id.*

5          Defendants argue they did not substantially burden Plaintiff's religious exercise because:

6  (1) Plaintiff could engage in group worship on the yard with other inmates and was free to pray

7  in his cell; (2) Plaintiff was offered two time slots on Friday mornings to participate in Jumu'ah,

8  but Plaintiff declined these offers; (3) the Supreme Court has held that RLUIPA does not require

9  prisons to allow inmates to attend their preferred day of prayer so long as they are provided with

10  an alternative dates.

11          First, the declaration of Chaplain Davis states that Plaintiff was the facilitator of a

12  Muslim prayer group, had been conducting services outside the chapel, and could also pray in his

13  cell or on the yard with other inmates. (Davis. Decl., ECF No. 60-3 at 3

14  ¶¶ 7-8.)

15          Whether Plaintiff could pray in his cell alone or could conduct other services outside the

16  chapel is immaterial to whether Defendants substantially burdened his religious practice by

17  refusing to allow him to congregate for Jumu'ah early Friday afternoons. "[T]he availability of

18  alternative means of practicing religion' has no bearing on the 'substantial burden' inquiry."

19  *Johnson*, 23 F.4th at 1216 (citing *Holt*, 574 U.S. at 361). Plaintiff's ability to engage in other

20  forms of religious exercise is relevant to the *Turner* analysis under Plaintiff's Free Exercise

21  claim, but it is not relevant to his RLUIPA claim. *See Holt*, 574 U.S. at 361-62 (RLUIPA

22  provides greater protection than the First Amendment; RLUIPA "asks whether the government

23

has substantially burdened religious exercise …, not whether the RLUIPA claimant is able to engage in other forms of religious exercise.").

Insofar as Defendants assert Plaintiff could pray on the yard, Chaplain Davis's declaration merely states Plaintiff could pray on the yard with other inmates, not that he could hold a Jumu'ah congregational prayer service on the yard. Plaintiff had requested to conduct Jumu'ah early Friday afternoons, and Davis never told him he could do so outside on the yard with other inmates. Instead, Davis testified he had no conversation with Plaintiff about organizing or scheduling a congregational prayer service for Jumu'ah early Friday afternoons. Moreover, Davis confirmed that when the Muslim inmates at LCC were eventually able to conduct Jumu'ah, there were about 22-25 inmates present. Davis acknowledged NDOC did not have the ability to set aside a space outside to allow 20-25 Muslims to pray Jumu'ah early Friday afternoons. (NDOC 30(b)(6) Depo., ECF No. 61-12 at 83-86.)

Plaintiff states in his affidavit that as early as the summer of 2018, he made several attempts to gather other Muslim inmates for a religious discussions outside when the weather permitted. Each time, the group would not make it more than five minutes before the guards would break them up, citing rules that forbid inmates gathering in groups of more than four. On one occasion, he was threatened with a notice of charges. (ECF No. 67-2 ¶¶ 1-3.) Defendants provide no evidence in response to these statements from Plaintiff, and Plaintiff's affidavit is consistent with Davis's testimony that guards may break up congregational religious services taking place on the yard. (NDOC 30(b)(6) Depo., ECF No. 61-12 at 83at 83.)

Next, Defendants argue there was no substantial burden because they offered Plaintiff two alternative time slots. Again, there is no admissible evidence to support Defendants' contention that there is "considerable flexibility" in the time that Jumu'ah prayer service could

take place. These alternatives would have concluded before 10:30 a.m. and Jumu'ah had to be performed in the early afternoon. Chaplain Davis specifically admitted that the alternatives offered were outside the time frame prescribed for Jumu'ah, and as such, were "not valid." (ECF No. 61-17.)[5]

Finally, Defendants' rely on the Supreme Court case of *O'Lone v. Estate of Shabazz,* as well as district court decisions in *Barendt v. Gibbons* and *Countryman v. Palmer,* for the proposition that there is no substantial burden when prison officials provide alternative times for the prayer service. Defendants' reliance on these cases, however, is misplaced.

Preliminarily, *O'Lone* involved a challenge under the Free Exercise Clause and not RLUIPA. *O'Lone* concluded there was no question the Muslim inmates had a sincerely held religious belief that compelled attendance at Jumu'ah. However, *O'Lone* did not specifically address whether the inmate's religious practice was substantially burdened. Instead, *O'Lone* pointed out that claims under the First Amendment's Free Exercise Clause are analyzed under the reasonableness standard set forth in *Turner v. Safley*: "the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone*, 482 U.S. at 349 (citing *Turner v. Safley*, 482 U.S. at 89). The *Turner* factors are considered "[o]nce a claimant demonstrates that the challenged regulation impinges on his sincerely held religious exercise[.]" *Jones*, 23 F.4th at 1144 (citation omitted). In *O'Lone,* the Supreme Court discussed the availability of other means of exercising his faith in connection with the analysis of the second *Turner* factor.

---

[5] The offer of other time slots is relevant if Defendants can demonstrate a compelling government interest for not allowing Jumu'ah early Friday afternoons and only during Friday mornings, provided that was the least restrictive means of furthering their compelling government interest.

1    RLUIPA claims, on the other hand, are not analyzed under a reasonableness standard.

2    Instead, the courts look at whether the restriction on the religious practice at issue furthers a

3    compelling government interest by the least restrictive means. The Supreme Court found in *Holt,*

4    and the Ninth Circuit confirmed in *Johnson,* that the inquiry in RLUIPA is with respect to "the

5    specific religious practice at issue" and "'not whether the RLUIPA claimant is able to engage in

6    other forms of religious exercise.'" *Johnson*, 23 F.4th at 1216 (citing *Holt*, 574 U.S. at 361-62).

7         In *Johnson*, the Ninth Circuit found that whether the inmate plaintiff had access to

8    unscented oil was immaterial to his RLUIPA claim when his faith required the use of scented oil

9    in his prayers. *Id*. (citing *Greene*, 513 F.3d at 987.) Similarly, whether Plaintiff had access to

10   congregational prayer in the morning is immaterial when the record demonstrates that he

11   requires access to congregational prayer for Jumu'ah early Friday afternoons.

12        *Barendt v. Gibbons,* No. 3:08-cv-00161-LRH-WGC, 2015 WL 4742191 (D. Nev. Aug.

13   10, 2015) and *Countryman v. Palmer*, No. 3:11-cv-00852-ECR-VPC, 2012 WL 4340659 (D.

14   Nev. Aug. 7, 2012), are district court decisions and not controlling precedent.

15         In *Countryman*, the magistrate judge found the inmate plaintiff did not demonstrate how

16   cancellation of a three-day Kairos event substantially burdened his practice of religion, and the

17   inmate did not explain how the requirement that group worship be supervised substantially

18   burdened his exercise of religion. *Countryman*, 2012 WL 4340659, at *7. Here, on the other

19   hand, Plaintiff has explained how the denial of participation in congregational Jumu'ah early

20   Friday afternoons substantially burdens his religion.

21        The magistrate judge in *Countryman* did state that courts had rejected the review that

22   prisons were obligated under RLUIPA to provide group services when inmates request them. *Id.*

23   at *4. This statement was made in an analysis of whether Plaintiff showed a likelihood of

1    irreparable harm for purposes of demonstrating the inmate was entitled to injunctive relief, and

2    not with respect to whether there was a substantial burden. Moreover, in making this statement,

3    the magistrate judge relied on a Fifth Circuit case, *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir.

4    2009), not on Ninth Circuit precedent.

5        The Ninth Circuit, on the other hand, recognized in *Greene v. Solano*, that not allowing

6    an inmate to engage in group worship could constitute a substantial burden on his religious

7    practice. *Greene*, 513 F.3d at 988. In addition, the Supreme Court held in *Holt* that where the

8    prison policy requires the inmate to "engage in conduct that seriously violates [his] religious

9    beliefs" it can substantially burden his religious exercise. *Holt*, 574 U.S. at 361. Here, Plaintiff

10    could have attended Jumu'ah in the morning, as offered by Defendants.  However, this would

11    have violated his undisputed religious belief that Jumu'ah must take place early Friday

12    afternoons.

13        In *Barendt*, the court relied on the same authority as *Countryman.*  In addition, the facts in

14    *Barendt* are distinguishable. There, the inmate was allowed to conduct the Shabbat candle

15    lighting service (that was supposed to coincide with the setting of the sun) by himself during

16    count, and then other inmates were allowed to join him after count concluded to engage in group

17    worship. Here, Plaintiff is being completely precluded from participating in Jumu'ah early

18    Friday afternoons.

19        In sum, the court finds there is no dispute that Defendants placed a substantial burden on

20    Plaintiff's religious exercise when he was precluded from congregating for Jumu'ah early Friday

21    afternoons. The court will now turn to whether Defendants had a compelling government interest

22    to justify their refusal to allow Plaintiff to congregate for Jumu'ah early Friday afternoons, and if

23    so, whether that compelling government interest was achieved by the least restrictive means.

**4. Compelling Interests and Least Restrictive Means**

This is an "exceptionally demanding" standard, which requires the government to "sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Holt*, 574 U.S. at 364-65 (internal citation and quotation marks omitted).

"Although RLUIPA adopts a compelling interest standard, context matters in the application of the standard, and courts should act with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Jones,* 23 F.4th at 1141 (quoting *Cutter,* 544 U.S. at 723).

Defendants argue there are several penological interests that justify limiting the number of inmates at Friday services. They state there are two custody levels—GP and PS—that require chapel time, so LCC had to divide chapel time to meet the requirements of AR 810. (Carpenter Decl., ECF No. 60-1 at 3 ¶ 7.) They claim scheduling, safety, and security do not allow for both custody levels to use the chapel at the same time. (*Id*. ¶ 8.) In addition, it would be difficult to ensure there were sufficient staff present in the chapel to supervise the inmates. (*Id.*) They further assert this would be a security threat as inmates could use the lack of supervision to plan criminal activities or attack staff. (*Id.*) They also contend there is no way to accommodate every inmate's preferred day or time of worship. (Davis Decl., ECF No. 60-3 at 3 ¶ 9.)

Even assuming Defendants had valid safety and security interests in not allowing Plaintiff to participate in Jumu'ah early Friday afternoons, the court finds the evidence is undisputed that Defendants' refusal to accommodate Plaintiff's request to participate in Jumu'ah early Friday

1  afternoons was not the least restrictive means of achieving their goal of keeping the prison safe

2  and secure.

3          While prison administrators are "accorded deference with regard to prison security," they

4  must establish they "actually considered and rejected the efficacy of less restrictive measures

5  before adopting the challenged practice." *Greene*, 513 F.3d at 989 (quoting *Warsoldier*, 418 F.3d

6  at 999) (internal quotation marks omitted). "[I]n light of RLUIPA, no longer can prison officials

7  justify restrictions on religious exercise by simply citing the need to maintain order and security

8  in a prison. RLUIPA requires more." *Id*. at 989-90. Moreover, "RLUIPA does not permit ...

9  unquestioning deference." *Holt,* 574 U.S. at 364; *see also Johnson,* 23 F.4th at 1217 ("we don't

10  grant 'unquestioning deference' to the government's claim of a general security interest").

11  "Instead, 'prison officials *must* set forth detailed evidence, tailored to the situation before the

12  court, that identifies the failings in the alternatives advanced by the prisoner.'" *Johnson*, 23 F.4th

13  at 1217 (emphasis original, quoting *Warsoldier*, 418 F.3d at 1000). "To this end, RLUIPA

14  requires a 'more focused' inquiry that looks at the challenged regulation's application to 'the

15  particular claimant whose sincere exercise of religion is being substantially burdened.'" *Id*.

16  (quoting *Holt*, 574 U.S. at 363). "[T]he government may not satisfy the compelling interest test

17  by pointing to a general interest—it must show the 'marginal interest in enforcing' the [policy at

18  issue against the particular inmate]." *Id*. (citation omitted).

19          Defendants offered Plaintiff time slots in the morning for Jumu'ah; however, this was not

20  the least restrictive alternative. The record reflects the obvious alternative for Defendants was to

21  switch the schedules of the PS and GP inmates so that Muslim GP inmates could access the

22  chapel in the early afternoon. Defendants' briefing fails to even address this alternative. Chaplain

23  Davis presented this option to Baker, but she rejected it, stating it would create too much

1  confusion for staff that would lead to a safety risk (Davis Depo., ECF No. 61-5 at 24:14-20).

2  However, Defendants have presented no evidence that actually supports Baker's fears of

3  confusion and safety risks as a result of a schedule change. Their evidence focuses only on

4  allowing the two custody classifications to attend chapel services at the same time.

5      In addition, the evidence reflects there were only one or two Muslim inmates in PS and

6  so they were not eligible to use the chapel (since there have to be five inmates to use the chapel

7  as a group). As such, there were no Muslim services going on in the chapel for PS inmates.

8  (Davis. Depo., ECF No. 61-5 at 24:6-13.) Baker also testified she was not aware of any religious

9  purpose behind the PS inmates being at chapel early Friday afternoons. (Baker Depo., ECF No.

10  61-3 at 71:21-72:1.) Nor do Defendants offer any other evidence of actual disruption or difficulty

11  that would be caused by this schedule change.

12      In fact, Davis testified that after the departure of Baker and Carpenter, the schedule

13  change was swiftly approved by Garrett and easily implemented with no evidence of security

14  issues or negative feedback from staff or inmates. (NDOC 30(b)(6) Depo. 18:2-19:18; 20:11-17;

15  106:17-23.)

16      There is also testimony that Plaintiff asked for the use of a space other than the chapel for

17  Jumu'ah, but Baker and Carpenter did not consider this as an alternative. NDOC's Religious

18  Practice Manual, effective September 5, 2017, states that if the chapel is not available, the

19  warden/designee will designate an area available for religious activities that meet the security

20  needs of the institution/facility.

21      Furthermore, other facilities within NDOC with more than one custody level were able to

22  accommodate Jumu'ah early Friday afternoons. Such a comparison between institutions is

23  "analytically useful when considering whether the government is employing the least restrictive

20

means." *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008). "Indeed, the failure of a defendant to explain why another institution with the same compelling interests was able to accommodate the same religious practices may constitute a failure to establish that the defendant was using the least restrictive means." *Id.* at 89-91 (citing *Warsoldier*, 418 F.3d at 1000). Here, Defendants do not address the evidence that other NDOC facilities were able to accommodate Jumu'ah during the prescribed timeframe.

The least-restrictive means standard requires the defendant to "'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Holt,* 574 U.S. at 364-65 (quoting *Hobby Lobby,* 537 U.S. at 728). Defendants have not demonstrated they meaningfully "considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999 (citation omitted). "'[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it.'" *Holt*, 574 U.S. at 365 (quoting *United States v. Playboy Ent. Group, Inc.*, 529 U.S. 803, 815 (2000)). Here, as in *Holt*, the Defendants have offered no sound reason why they could not have simply switch the schedules of the GP and PS inmates.  In fact, this change was easily implemented after the departure of Baker and Carpenter. As such, the Defendants' interests in safety and security cannot sustain their refusal to allow Plaintiff to participate in Jumu'ah early Friday afternoons.

Therefore, summary judgment should be granted in Plaintiff's favor as to the RLUIPA claim.

**C. FIRST AMENDMENT FREE EXERCISE CLAUSE**

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment...prohibits government from making a law prohibiting the free exercise [of

religion].” *Hartmann*, 707 F.3d at 1122 (citations and quotation marks omitted, alteration original). “The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security.” *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam); *see also O'Lone*, 482 U.S. at 348; *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Hartmann*, 707 F.3d at 1122; *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008).

To implicate the Free Exercise Clause, a prisoner must establish his belief is both sincerely held and rooted in religious belief. *See Shakur*, 514 F.3d at 884-85. “The Free Exercise Clause does not require plaintiffs to prove the centrality or consistency of their religious practice: ‘It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith.’” *Jones*, 23 F.4th at 1145 (quoting *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 689 (1989)). The test is whether the plaintiff sincerely believes the conduct at issue is consistent with his faith. *Id*. (citation omitted).

“A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion.” *Jones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015) (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987), *aff'd sub nom. Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989)).

“Once a claimant demonstrates that the challenged regulation impinges on his sincerely held religious exercise, the burden shifts to the government to show that the regulation is ‘reasonably related to legitimate penological interests.’” *Jones,* 23 F.4th at 1144 (quoting *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015)).

In analyzing the legitimacy of regulation of a prisoner's religious expression, the court is instructed to utilize the "reasonableness" factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987). *See O'Lone*, 482 U.S. at 349; *Jones*, 791 F.3d at 1032; *Shakur*, 514 F.3d at 884. "To ensure that courts afford the appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349 (citation omitted).

The *Turner* reasonableness factors are: (1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; (4) the "absence of ready alternatives" and "the existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-91; *see also O'Lone*, 482 U.S. at 349.

Neither party addresses the *Turner* factors in their motion for summary judgment. Plaintiff cites the strict scrutiny standard applicable to Free Exercise Clause claims brought by non-inmate plaintiffs, but the correct standard for an inmate bringing a claim under the Free Exercise Clause is one of reasonableness under *Turner*. While Plaintiff addresses the *Turner* factors in his response to Defendants' motion for summary judgment, neither party has met their initial burden for purposes of their own motion. Therefore, the motions should both be denied as to the First Amendment Free Exercise Clause claim.

**D. ESTABLISHMENT CLAUSE**

"The Establishment Clause, applicable to state action by incorporation through the Fourteenth Amendment, states that Congress shall make no law respecting an establishment of religion." *Hartmann,* 707 F.3d at 1125 (internal citation and quotation marks omitted). "This clause 'means at least' that '[n]either a state nor the Federal Government...can pass laws which aid one religion, aid all religions, or prefer one religion over another.'" *Id*. (citation omitted)."[A] prison regulation accommodating inmates' rights under the First Amendment must do so without unduly preferring one religion over another[.]" *Id*. (citation omitted).

Defendants' motion does not mention Plaintiff's Establishment Clause claim; therefore, Defendants' motion should be denied as to this claim.

Plaintiff's motion argues that Defendants' prohibition of Muslims participating in weekly Jumu'ah services reflects their preference for Christianity and Judaism because they allowed those faith groups to congregate for their weekly services which conveys a message that the prison endorses Christianity and Judaism over Islam.

In response, Defendants assert that they did not prohibit Muslim inmates from participating in Jumu'ah, but instead they tried to accommodate Muslim inmates by providing alternative times for their religious service. Defendants further argue that there is no evidence that they preferred one religious denomination over another, but they attempted to accommodate all religions within NDOC.

NDOC's Faith Group Overview constitutes at least some evidence that NDOC attempted to accommodate the personal and group worship requirements of the 28 faith groups recognized by NDOC. (ECF Nos. 60-5, 60-6.) Moreover, it is not clear on this record whether these other

1  groups requested and were granted the ability to participate in group prayer services on a

2  particular date and time that coincides with their faith, while Plaintiff was not.

3       Davis testified that LCC allowed Jewish and Messianic inmates in GP to congregate in

4  activity rooms for Friday and Saturday nightly services.  However, he said this was for custody

5  reasons because they were level two and three inmates that were not allowed to use the chapel at

6  night. (NDOC 30(b)(6) Depo. ECF No. 61-12 at 80:1-8.) There is no evidence regarding whether

7  these groups had a requirement that their services take place on a particular day and at a

8  particular time, and that they were allowed their preference of time and date while Plaintiff was

9  not so as to demonstrate preference of their religion over Plaintiff's.

10      Therefore, there is question of fact as to whether there was a violation of the

11 Establishment Clause, and Plaintiff's motion for summary judgment should be denied in this

12 regard.

13 **E. EQUAL PROTECTION CLAUSE**

14      "The Equal Protection Clause requires the State to treat all similarly situated people

15 equally." *Shakur*, 514 F.3d at 891 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432,

16 439 (1985)). To prevail on an Equal Protection claim under § 1983, the plaintiff  must establish

17 that "the defendants acted with an intent or purpose to discriminate against [him] based upon

18 membership in a protected class." *Hartmann,* 707 F.3d at 1123 (quotation marks and citation

19 omitted).

20      "[T]he Equal Protection Clause entitles each prisoner to 'a reasonable opportunity of

21 pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to

22 conventional religious precepts.'" *Shakur,* 514 F.3d at 891 (quoting *Cruz*, 405 U.S. at 322).

23 "This does not mean, however, that all prisoners must receive identical treatment and resources."

1  *Hartmann*, 707 F.3d at 1123 (citing *Cruz*, 405 U.S. at 322 n. 2.; *Ward*, 1 F.3d at 880; *Allen v.*

2  *Toombs*, 827 F.2d 563, 568-69 (9th Cir. 1987)).

3       In *Shakur*, the Ninth Circuit said the standard applied to an inmate's religious equal

4  protection claim is the four-part reasonableness test under *Turner. Shakur*, 514 F.3d at 891.

5  Under that test, the inmate cannot succeed "if the difference between the defendants' treatment

6  of him and their treatment of [inmates of another faith group] is reasonably related to legitimate

7  penological interests." *Id*. (citation and quotation marks omitted).

8       As with the Free Exercise Clause claim, neither party addresses the *Turner* factors in its

9  motion for summary judgment with respect to the Equal Protection Clause claim. In fact,

10  Plaintiff's motion utilizes the strict scrutiny standard applied to religious discrimination

11  allegations by *non-inmates*. Therefore, neither party has met their burden, and both motions

12  should be denied as to the Equal Protection Clause claim.

13  **F. ARTICLE 1, SECTION 4 of the NEVADA CONSTITUTION**

14       Neither party addresses Plaintiff's claim under Article 1, Section 4 of the Nevada

15  Constitution. Therefore, their motions should both be denied as to this claim.

16  **G. QUALIFIED IMMUNITY**

17       "In evaluating a grant of qualified immunity, a court considers whether (1) the state

18  actor's conduct violated a constitutional right and (2) the right was clearly established at the time

19  of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021)

20  (citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*,

21  555 U.S. 223 (2009)). "Either question may be addressed first, and if the answer to either is 'no,'

22  then the state actor cannot be held liable for damages." *Id*. at 968 (citation omitted).

23

First, Defendants argue that under *O'Lone* there is no requirement to accommodate Plaintiff's request for Friday afternoon prayer service when they provided alternative times and methods for worship.

Again, *O'Lone* did not address a claim under RLUIPA, which employs a different standard than a Free Exercise claim. In addition, *O'Lone* did not hold that there was no requirement to accommodate Plaintiff's request for Friday early afternoon Jumu'ah if the prison provided alternative times for worship. Instead, *O'Lone* held that the outcome depends on an analysis of the *Turner* factors. The law was clearly established in this regard.

Second, Defendants contend that they are entitled to qualified immunity because they relied on AR 810, and it has not been deemed unconstitutional.

It was clearly established that a prison official violates RLUIPA if he or she substantially burdens an inmate's religious practice and the basis for the burden is not supported by a compelling government interest, or if it is, that compelling government interest is not achieved by the least restrictive means. *Holt,* 574 U.S. 352; *Hartmann*, 707 F.3d at 1124.

It was clearly established that a prison official violates the Free Exercise Clause if he or she substantially burdens an inmate's religious exercise and the basis for burdening the religious exercise is not reasonably related to legitimate penological interests. *Hartmann*, 707 F.3d at 1122; *Shakur*, 514 F.3d at 883-84.

It was clearly established that a prison official violates the Establishment Clause if he or she prefers one religion over another. *Hartmann*, 707 F.3d at 1125.

Finally, it was clearly established that a prison official violates the Equal Protection Clause if an inmate is not given "a reasonable opportunity of pursuing his faith comparable to the

opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Shakur*, 514 F.3d at 891 (quotation marks and citation omitted).

Taking the facts in the light most favorable to Plaintiff, a fact finder could determine that Defendants violated these rights.

For these reasons, Defendants are not entitled to qualified immunity.

## H. RLUIPA RELIEF

An inmate cannot recover damages under RLUIPA against prison officials. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011); *Wood v. Yordy,* 753 F.3d 899, 904 (9th Cir. 2014); *Jones v. Slade,* 23 F.4th 1124, n. 4 (9th Cir. 2022). Instead, "[a] RLUIPA plaintiff may only sue defendants in their official capacities for prospective injunctive relief." *Jones,* 23 F.4th at n. 4.

The record reflects that LCC began allowing Muslim inmates to participate in Jumu'ah early Friday afternoons in August of 2020. Further briefing should be required to determine whether Plaintiff has received the injunctive relief he seeks in this action for the RLUIPA claim or whether that request is moot.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

**GRANTING** Plaintiff's motion for summary judgment (ECF No. 61) and **DENYING** Defendants' motion for summary judgment (ECF No. 60) as to Plaintiff's RLUIPA claim;

**DENYING** both Plaintiffs' (ECF No. 61) and Defendants'(ECF No. 60) motions with respect to Plaintiff's claims under the First Amendment's Free Exercise and Establishment Clauses, the Equal Protection Clause, and Plaintiff's claim under Article 1, Section 4 of the Nevada Constitution.

1    **DENYING** Defendants' motion (ECF No. 60) insofar as the argue they are entitled to

2  qualified immunity.

3    Finally, if this Report and Recommendation is adopted with respect to the RLUIPA

4  claim, the court should require further briefing on whether Plaintiff has received the injunctive

5  relief he seeks with respect to the RLUIPA claim or whether that request is moot.

6    The parties should be aware of the following:

7    1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

8  this Report and Recommendation within fourteen days of being served with a copy of the Report

9  and Recommendation. These objections should be titled "Objections to Magistrate Judge's

10  Report and Recommendation" and should be accompanied by points and authorities for

11  consideration by the district judge.

12    2. That this Report and Recommendation is not an appealable order and that any notice of

13  appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

14  until entry of judgment by the district court.

15

16  Dated: May 13, 2022

17  _____

18  Craig S. Denney
    United States Magistrate Judge

19

20

21

22

23